825 P.2d 961

**The STATE of Arizona, Appellee,**

v.

**Urbano Carnero ANAYA, Appellant.**

**No. 2 CA–CR 90–0110.**

Court of Appeals of Arizona, Division 2, Department B.

Sept. 19, 1991.

Review Denied March 17, 1992.

**438**

Grant Woods, Atty. Gen. by Paul J. McMurdie and Bruce M. Ferg, Tucson, for appellee.

Dunscomb & Shepherd, P.C. by Denice R. Shepherd, Tucson, for appellant.

## OPINION

ROLL, Presiding Judge.

Defendant Urbano Carnero Anaya appeals from his convictions for aggravated assault and endangerment. Because a co-defendant failed to offer a racially neutral explanation for his exercise of peremptory challenges resulting in the exclusion of two black venirepersons, we vacate the judgment of guilt and remand this matter to the trial court for further proceedings.

### FACTS

On May 8, 1989, deputies from the Pima County Sheriff's Office responded to a call and discovered defendant Anaya and co-defendant Paul Morris on a Tucson street pointing firearms at each other.

After Anaya was advised of his *Miranda* rights, he agreed to answer questions of Deputy James Lukasky. Anaya stated that he and Morris had quarrelled and that both eventually produced firearms. Anaya said that Morris possessed a 9 mm. handgun and Anaya obtained a shotgun. Anaya told the deputy that he would have shot Morris had law enforcement officers not arrived. Co-defendant Morris made racial slurs toward a black detective.

### PROCEDURAL HISTORY

Anaya and Morris were indicted for aggravated assault and endangerment. The state moved for severance of the defendants' trials based upon *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Both Anaya and co-defendant Morris opposed severance and their cases were tried jointly. At trial, both defendants testified, blaming each other for causing the situation. Both asserted that they were acting in self-defense.

The jury found Anaya guilty of aggravated assault and endangerment, both of a dangerous nature. Morris was found guilty of attempted aggravated assault and endangerment, also of a dangerous nature. Both defendants timely appealed and the state's motion to consolidate the appeals was granted. Morris died in prison, however, and we address only Anaya's appeal.

### ISSUES

Anaya argues that (1) the trial court erred in overruling his objection to Morris's use of peremptory challenges to strike two black venirepersons, (2) prosecutorial misconduct deprived him of a fair trial, (3) the trial court erroneously instructed the jury on the lesser-included offense of attempted aggravated assault, and (4) the trial court erred in not conducting a suppression hearing regarding his post-arrest statements.

## PEREMPTORY CHALLENGES

Anaya, an Hispanic, argues that the trial court erred when it failed to require Morris to offer a racially neutral explanation for peremptory challenges to two black venirepersons. Our standard of review of this question of law is *de novo. United States v. De Gross,* 913 F.2d 1417, 1420 (9th Cir. 1990).[1]

Anaya timely objected to Morris's peremptory challenge of the two venirepersons. The trial judge expressed doubt regarding the power of the court to force Morris's attorney to disclose his reasons for exercising the strikes. When the trial court questioned the challenges, Morris's attorney replied that *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), applied to prosecutors only and stated, "I don't think I am under an obligation to make a record on that point." The trial court then permitted Morris to strike the two black venirepersons. Accordingly, this court has no express indication as to the reasons why Morris's attorney excluded the two black venirepersons from the jury.

### Batson and Progeny.

In *Batson,* the Supreme Court held that a prosecutor could not exercise a peremptory challenge resulting in the exclusion of a prospective juror of the same race as the defendant, absent a racially neutral reason for the challenge. Thereafter, the Supreme Court extended *Batson* by ruling that a criminal defendant, regardless of race, may challenge a prosecutor's racially based peremptory challenge. *Powers v. Ohio,* 499 U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). *See also State v. Katzorke,* 167 Ariz. 599, 810 P.2d 597 (App. 1990) (anticipating *Powers* ). *Batson* has been interpreted as precluding the peremptory challenge of any cognizable group when the challenge is made for a discriminatory purpose. *De Gross, supra* (*Batson* prohibits peremptory challenges on the basis of gender); *Hernandez,* 170 Ariz. 301, 823 P.2d 1309. In *Edmonson v. Leesville Concrete Co.,* —— U.S. ——, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), the Supreme Court held that *Batson* applies to the exercise of peremptory challenges by a private litigant in a civil action. Whether *Batson* applies to the exercise of a peremptory challenge by a criminal defendant is a question of first impression in Arizona.

### State Action.

██ In order for a party's exercise of a peremptory challenge to violate the equal protection clause of the United States Constitution, exercise of the challenge must constitute state action. *Edmonson,* —— U.S. at ——, 111 S.Ct. at 2082, 114 L.Ed.2d at 673. Whether conduct constitutes state action involves a two step analysis: (1) does the claimed constitutional deprivation arise from a right or privilege having state authority as its source; and (2) can the party exercising the right be fairly characterized as a state actor. *Id.* at —— – ——, 111 S.Ct. at 2082–2083, 114 L.Ed.2d at 673– 674. A majority of the Supreme Court has concluded that because the government provides the forum for the exercise of peremptory challenges, a civil litigant's exercise of such challenges constitutes state action. *Id.* at —— – ——, 111 S.Ct. at 2084–2085, 114 L.Ed.2d at 674–675.

██ In *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), the Supreme Court ruled that a public defender's representation of an indigent defendant does not constitute action "under color of state law" for purposes of a civil rights claim brought pursuant to 42 U.S.C. § 1983, in a lawsuit alleging inadequate representation. In Justice O'Connor's dissent in *Edmonson,* —— U.S. at ——, 111 S.Ct. at 2094, 114 L.Ed.2d at 688, she stated:

At a minimum then, the Court must concede that

*Dodson* stands for the proposition that a criminal defense attorney is not a state actor when using peremptory strikes on behalf of a client. . . .

---

1. The trial court's ruling on a peremptory challenge is a finding of fact, subject to a clearly erroneous standard of review. *State v. Hernandez,* 170 Ariz. 301, 823 P.2d 1309 (Ct.App.1991).

Justice Scalia, in his *Edmonson* dissent, disagreed, stating that logically the rationale of *Edmonson* must also apply to criminal litigation. *Id.* at ——, 111 S.Ct. at 2095, 114 L.Ed.2d at 689. In *People v. Kern*, 75 N.Y.2d 638, 656–57, 554 N.E.2d 1235, 1245, 555 N.Y.S.2d 647, 657 (1990), the New York Court of Appeals articulated why the exercise of peremptory challenges by a criminal defendant constitutes state action:

A defendant's right to exercise the challenges is conferred by State statute * * *. The jurors are summoned for jury service by the State * * *, sit in a public courtroom and are subject to voir dire at the direction of the State, and, although defense counsel exercises the peremptory challenge and advises the Judge of the decision, it is the Judge, with the full coercive authority of the State, who enforces the discriminatory decision by ordering the excused juror to leave the courtroom escorted by uniformed court officers or Deputy Sheriffs. The jurors do not know whether it is the Judge, the prosecutor or the defense attorney who has excused them, and the inference is inescapable to both the excluded jurors and the public that it is the State that has ordered the jurors to leave. When these jurors are so excluded solely because of their race, the State cannot ignore its role in the discrimination against them.

Because the Supreme Court has ruled that the exercise of peremptory challenges by a non-government party in a civil trial constitutes "state action," *Edmonson*, we believe the conclusion is inescapable that co-defendant Morris's use of peremptory challenges constituted state action.

*Violation of Venireperson's Rights.*

■ In *Batson*, the Supreme Court stated that the harm caused by the racially motivated exercise of a peremptory challenge is visited upon both the defendant and the prospective juror. *Batson*, 476 U.S. at 87, 106 S.Ct. at 1718, 90 L.Ed.2d at 81. The equal protection clause protects a prospective juror from being excluded from jury service on account of race. *Powers*,

499 U.S. at ——, 111 S.Ct. at 1370, 113 L.Ed.2d at 424. Nor is the harm visited upon a venireperson by the racially motivated exercise of a peremptory challenge diminished because the challenge was made by a defense attorney rather than a prosecutor. *State v. McCollum*, 261 Ga. 473, 476, 405 S.E.2d 688, 691 (1991) (Benham, J., dissenting).

*Standing.*

■ The Supreme Court has articulated the test for determining whether a party has standing to raise a venireperson's claim that opposing counsel has misused a peremptory challenge: (1) has the litigant suffered an injury in fact; (2) does the litigant have a "close relation to the third party"; and (3) does some hindrance exist to the third-party's ability to vindicate their interests. *Edmonson*, —— U.S. at ——, 111 S.Ct. at 2087, 114 L.Ed.2d at 679; *Powers*, 499 U.S. at —— – ——, 111 S.Ct. at 1370–1371, 113 L.Ed.2d at 425–426. In *Powers*, a majority of the Supreme Court concluded that a criminal defendant has standing to raise a venireperson's claim of impermissible exclusion. In *Edmonson*, a majority of the Supreme Court concluded that a private litigant in a civil action had standing to raise the claims of two venirepersons excluded from jury service by virtue of opposing counsel's exercise of peremptory challenges. *Edmonson*, —— U.S. at ——, 111 S.Ct. at 2087, 114 L.Ed.2d at 679. We conclude that Anaya has standing to raise the excluded venirepersons' claims.

*Batson Applies to Co-defendant's Peremptory Challenges.*

Other jurisdictions have ruled that *Batson* applies to the exercise of peremptory challenges by defense counsel in criminal proceedings. *De Gross, supra; State v. Levinson*, 71 Haw. 492, 795 P.2d 845 (1990) (defendant's abuse of peremptory challenges violates state constitutional privilege of citizens to serve on juries); *Kern*, 75 N.Y.2d at 651–52, 554 N.E.2d at 1242, 555 N.Y.S.2d at 654, (jury duty is a privilege of citizenship which may not be denied on basis of race by either side to criminal

litigation). *See also McCollum*, 261 Ga. at 473–479, 405 S.E.2d at 689–693 (Hunt, J., Benham, J., and Fletcher, J., dissenting).

■ In reliance upon *Batson, Powers,* and *Edmonson,* we hold that the trial court should have required co-defendant Morris to offer a racially neutral explanation for his peremptory challenges of the two black venirepersons. Although it may not be possible for the trial court to reconstruct the reasons why the two challenges in question were exercised, we remand this matter for the purpose of attempting to do so.

In so ruling, we are mindful of the concerns voiced by some members of the Supreme Court that *Batson* and its progeny are signalling the end of peremptory challenges, because every peremptory challenge is exercised based upon irrelevant characteristics. *Powers*, 499 U.S. at —– ——, 111 S.Ct. at 1378–1379, 113 L.Ed.2d at 434–435 (Scalia, J., dissenting), and results in the exclusion of some member of the panel based upon a distinction perceived by the striking attorney, including "race, religion, nationality, occupation or affiliations. . . ." *Batson*, 476 U.S. at 123, 106 S.Ct. at 1737, 90 L.Ed.2d at 105 (Burger, C.J., dissenting), (quoting *Swain v. Alabama*, 380 U.S. 202, 220, 85 S.Ct. 824, 836, 13 L.Ed.2d 759, 772 (1965)).[2] Nor are we unmindful of Justice Scalia's warning that convictions of criminal defendants are being overturned based upon the denial of equal protection rights of people other than the defendant. *Powers*, 499 U.S. at —–, 111 S.Ct. at 1381, 113 L.Ed.2d at 438 (Scalia, J., dissenting). Nevertheless, adherence to principles defined by the Supreme Court compel this result.

Because the trial court, on remand, may conclude that the peremptories were permissibly exercised, we address the remaining issues.

**2.** In *Batson,* 476 U.S. at 124, 106 S.Ct. at 1738, 90 L.Ed.2d at 106, Chief Justice Burger observed:
   [I]t is quite probable that every peremptory challenge could be objected to on the basis that, because it excluded a venireman who

## PROSECUTORIAL MISCONDUCT

■ The defendant asserts that a number of statements made by the prosecutor during the course of the trial constitute misconduct so egregious as to require reversal of his convictions. A trial court's ruling on a motion for new trial based upon prosecutorial misconduct will not be reversed absent abuse of discretion. *State v. Hansen*, 156 Ariz. 291, 297, 751 P.2d 951, 957 (1988).

### Prosecutor's Opening Statement.

■ Anaya cites as misconduct the prosecutor's comment in his opening statement that Anaya and Morris "know a lot about this case. And there are certain things that we don't know." Anaya argues that the prosecutor's opening statement suggested to the jury that it would not know the true story unless Anaya and Morris testified.

No objection was made to this comment, however, and therefore this court must reverse only if the comment constituted fundamental error. *State v. Valdez*, 160 Ariz. 9, 13–14, 770 P.2d 313, 317–318 (1989). Fundamental error "is error that goes to the heart of the defendant's case or takes from him a right essential to his defense." *Id.* at 14, 770 P.2d at 318. No fundamental error occurred here. Immediately after the prosecutor made the statement, he reminded the jury that the defense had no responsibility to present any evidence. In addition, both defendants testified. We find no error on this ground.

### Evidence of Co-defendant's Failure to Claim Self-defense.

■ At trial, the prosecutor asked Deputy Rhodes whether he had heard co-defendant Morris state that Morris was acting in self-defense. The trial court sustained the objections of both defense counsel, concluding that the question called for the admission of exculpatory statements. A defen-

had some characteristic not shared by the remaining members of the venire, it constituted a 'classification' subject to equal protection scrutiny.

dant's exculpatory post-arrest statements are inadmissible hearsay because they lack the reliability of statements against interest. Ariz.R.Evid., 804(b)(3), 17A A.R.S.; *State v. Flores,* 160 Ariz. 235, 237–238, 772 P.2d 589, 591–592 (App.1989).

■ At a conference held outside the jury's presence, the prosecutor asserted that because Morris had made some statements, the state was permitted to show that Morris never claimed that he was defending himself. This tactic is unlike that. condemned in *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). In *Doyle,* the Supreme Court held that the use of post-arrest silence by the prosecution to impeach a testifying defendant violates the due process clause. Here, because the co-defendant did make some post-arrest statements, the co-defendant's rights were not violated. Further, even had the co-defendant's rights under *Doyle* been violated, Anaya was not prejudiced by the question.

*Evidence of Defendant's Refusal to Answer Certain Questions.*

■ The defendant next argues that the prosecutor impermissibly presented evidence of the defendant's invocation of his right to remain silent after his arrest. The state presented evidence that the defendant voluntarily spoke to police and then, when law enforcement officers declined to remove his handcuffs, refused to make any further statements. In *State v. Robinson,* 127 Ariz. 324, 327, 620 P.2d 703, 706 (App. 1980), *cert. denied,* 450 U.S. 1044, 101 S.Ct. 1765, 68 L.Ed.2d 242 (1981), this court found no error where a police detective testified that the defendant made some statements to the police, then terminated the conversation. Admission of this evidence, to which Anaya did not object, did not constitute fundamental error.

*Prosecutor's Closing Argument.*

■ Anaya asserts that the prosecutor engaged in improper argument when he stated that the jurors should be certain that the testimony of witnesses made sense "because you are like me, basically, a trusting person." This argument did not consti-

tute improper vouching or an impermissible suggestion by the prosecutor of knowledge of things outside the record. *Compare State v. Salcido,* 140 Ariz. 342, 344, 681 P.2d 925, 927 (App.1984) (prosecutor may not "testify" to matters not in evidence or vouch for the credibility of witnesses). We find no error on this ground.

■ Anaya also argues that the prosecutor's remark to the jury that self-defense must be the sole motivation for the use of force created confusion on the part of the jurors. Initially, we note that the trial court promptly admonished the jury that the jury instructions correctly stated the law. A timely admonition is presumed to cure the prejudice arising from improper argument. *State v. Van Alcorn,* 136 Ariz. 215, 219, 665 P.2d 97, 101 (App.1983). In any event, the prosecutor's argument was not a misstatement of the. law. *State v. Reid,* 155 Ariz. 399, 403, 747 P.2d 560, 564 (1987); *State v. Noriega,* 142 Ariz. 474, 482, 690 P.2d 775, 783 (1984), *overruled on other grounds, State v. Burge,* 167 Ariz. 25, 804 P.2d 754 (1990). We find no error.

## LESSER–INCLUDED OFFENSE INSTRUCTION

■ The defendant contends that the trial court should not have instructed the jury on attempted aggravated assault as a lesser-included offense of aggravated assault. Any error arising from the giving of the instruction was harmless, however, because the jury convicted the defendant of the highest offense, thereby rejecting all lesser-included offenses. *State v. Tucker,* 157 Ariz. 433, 447, 759 P.2d 579, 593 (1988).

■ Although the defendant argues that his conviction for aggravated assault is inconsistent with the co-defendant's conviction of attempted aggravated assault, this argument is without merit. Arizona permits inconsistent verdicts. *State v. Zakhar,* 105 Ariz. 31, 32–33, 459 P.2d 83, 84–85 (1969); *Malott v. Miller,* 162 Ariz. 239, 782 P.2d 715 (App.1989).

## DEFENDANT'S STATEMENTS

The defendant argues that the court erred when it failed to conduct an evidentiary hearing to determine the admissibility of his statements. The defendant maintains that once he filed a motion to suppress statements, the burden was on the court to determine in a voluntariness hearing whether the statements were voluntarily made. The motion to suppress statements was but one of several motions included in a pleading entitled "Pre-trial Motions." None of the motions was supported by any specific factual allegations.

The defendant is responsible for properly raising issues such as voluntariness and *Miranda* compliance. *State v. Alvarado*, 121 Ariz. 485, 487, 591 P.2d 973, 975 (1979). The defendant failed to provide the court with any factual basis for suppression of this evidence. Accordingly, the written motion was insufficient to raise this issue.[3] Ariz.R.Crim.P. 35.1 and comment thereto, 17 A.R.S.; *State v. Wilson*, 164 Ariz. 406, 407, 793 P.2d 559, 560 (App. 1990). We find no error.

## CONCLUSION

We have searched the record for fundamental error and, other than as noted, have found none. We vacate and remand for proceedings consistent with this opinion.

FERNANDEZ and HATHAWAY, JJ., concur.

---

3. We also note that the evidence presented at trial supports the conclusion that the defendant's statements were wholly voluntary and given after proper *Miranda* warnings and waiver thereof.